BROWN v. ST. BERNARD PARISH SCHOOL BOARD.

(January 13, 1930. Opinion and Decree.)

Olivier S. Livaudais, of New Orleans, attorney for plaintiff, appellant.

L. H. Perez, of New Orleans, attorney for defendant, appellee.

JANVIER, J. Plaintiff sues for $1,125 claimed as salary she would have earned as auxiliary teacher for the school term 1927-1928, had the contract which she entered into with the St. Bernard Parish School Board, through J. C. Blanchard, superintendent, not been cancelled by the school board because of alleged want of authority in Blanchard.

Defendant contends that Blanchard had no authority to represent it in executing the contract and, that, therefore, his actions were entirely without effect.

Under Act 100 of 1922 which, it is conceded, is the statute which is controlling

here, contracts with teachers must be signed by the superintendent, as the representative of the parish school board, but under section 20 of that Act the selection of the teachers is made by the board from nominations sent in by the superintendent. In other words, the method is as follows: The superintendent makes his nominations to the board. The board then approves or disapproves the nomination. If it approves, the superintendent then executes contracts with the teachers selected. If it disapproves, two courses are open to it under the Act, either new nominations may be made by the superintendent or "a majority of the full membership of the board may elect teachers without the endorsement of the superintendent."

On July 2nd, 1927, the board met to act on the nominations made by the superintendent. On the list of nominations the name of Miss Georgiana W. Brown, plaintiff, appeared as the person recommended by the superintendent as one of the teachers for the St. Bernard Consolidated School. The board approved this list and thus authorized the superintendent to enter into contracts with the various parties named, among them plaintiff, she, as we have stated, having been assigned by the board to the particular school mentioned, to-wit: St. Bernard Consolidated School.

Miss Brown did not care to accept the position in that school but desired appointment as auxiliary teacher, a position which she had occupied for several years. On the list of nominations submitted by the superintendent to the board on July 2nd, there appeared no name as bearing the superintendent's recommendation for the position of auxiliary teacher.

Upon Miss Brown's refusal to accept a contract to teach in the school to which she was assigned by the board, the superintendent agreed to appoint her to her former position as auxiliary teacher, and sent her a contract for that position. In due course and within the time limit she signed and returned this contract and upon the opening of the school term, entered upon her duties as auxiliary teacher.

Shortly thereafter, she was notified that the board did not require her services as auxiliary teacher and that her alleged contract was cancelled.

The sole question presented is whether or not the superintendent had authority to enter into the contract.

Plaintiff's counsel contends that since, for several years, the superintendent had entered into contracts with her, she was justified in assuming that he had that authority. In support of this contention counsel cites Berlin v. Cusachs, Ltd., 114 La. 744, 38 So. 539, in which the court said:

"The authority of the subordinate agents of a corporation often depends upon the course of dealing which the company or its directors have sanctioned. It may be established sometimes without reference to the official record of the proceedings of the board, by proof of the usages which the company has permitted to grow up in the business, and of the acquiescence of the board charged with the duty of supervising and controlling the company's business. Parties dealing with the president of a corporation in the usual manner, and within the scope of the powers which the president has been accustomed to exercise without the assent of the directors, and not ultra vires of the corporation, would be entitled to assume that he had been actually invested with those powers."

That case does not appear applicable

here, for, of course, a private corporation which by its conduct leads one to believe that an agent has authority is therefore estopped to deny that authority, but that rule does not apply to a public body or board, the duties and powers of whose officers are fixed by law. Those who deal with such officers are bound to know the law with reference thereto. In State v. La. Cypress Lumber Co., 144 La. 559, 80 So. 722, the court said:

"The state is not estopped by the unauthorized acts of officers whose powers are defined and limited by law."

In addition to the constructive knowledge that is assumed by law to exist in those persons dealing with public boards, it is highly probable that Miss Brown had actual knowledge of the fact that the superintendent had not been authorized to employ her as auxiliary teacher. The contract that was sent her referred to the fact that the superintendent was authorized under resolution of the board of July 2, 1927, and a mere glance at that resolution would have shown that no such authority was contained therein. Furthermore, the letter of the superintendent to Miss Brown, dated August 27, 1927, in which he enclosed the contract in question, indicated that there was something wrong with the situation and that he had been waiting up to that time apparently for the particular authority that he desired to appoint Miss Brown, to that special position.

Plaintiff cites Picou v. St. Bernard Parish School Board, No. 8600 of the docket of this court, decided April 7, 1924, in which the teacher had been appointed by the board and was later removed by the board without cause. It is apparent that that case has no application here because manifestly if the board itself acted in making the appointment, the same board could not remove without just cause.

In Gauthier v. School Board, 5 La. App. 570, this court dealt with a situation identical with that presented here. A teacher was approved by a board and assigned to a designated school. He did not want to teach in that school, and, therefore, requested the superintendent to assign him to another. Whether the superintendent actually sent him the contract for that school is not conclusively shown, but this court held that it was not necessary to determine whether the contract had, in fact, been executed because whether it had or not, it would have been ineffective, since the superintendent had no authority to appoint any one to any other position than that specified by the board. In that case this court said:

"It is thus seen that the law is mandatory to the effect that the Parish School Board shall select teachers from nominations made by the parish superintendent, and we do not believe that this duty can be delegated to the parish superintendent.

"If this official did send the purported contract signed by him to plaintiff herein (a fact upon which the proof is by no means conclusive) and if plaintiff did sign and return the document, it can have no legal significance, because it is violative of Section 20 of the School Law."

It is true that in that case it appears that the teacher did not have the necessary certificate for the position to which the superintendent appointed him, whereas here the young lady was amply qualified for the position, as is evidenced by the fact that she had satisfactorily filled it for several years, but to permit the superintendent to enter into contracts different from those approved by the board, would be to allow him to substitute his

will for that of the board, which is contrary to the contemplation of the statute.

The fact that on April 7, 1927, the board had adopted a resolution to the effect:

"RESOLVED, That, the Parish Superintendent, be, and he is hereby empowered to re-employ teachers whom he may wish to retain in the service for the 1927-28 school session, and to employ such other qualified teachers as he may need to fill such vacancies as may exist prior to the meeting of the Board when the list of teachers will be submitted."

is of no importance so far as Miss Brown is concerned, as the superintendent took no action under that resolution but waited until the July meeting, at which meeting a specific resolution was adopted with reference to Miss Brown and which designated her to the other position and not to the one mentioned in the contract in question.

What may have been the real reason for the action of the board it is not within our province to investigate. That they had the right to refuse to appoint her to the position of auxiliary teacher and that they did so refuse is all that is necessary for us to determine. It is regrettable that the young lady was deprived of the opportunity of securing another position for the school year in question, but we are powerless to remedy the situation, which resulted from her dealing with the superintendent in regard to a matter, with reference to which, he was not authorized to contract.

We feel that the action of the trial court in dismissing Miss Brown's suit is correct.

The judgment appealed from is, therefore, affirmed.