JANVIER, Judge.
Allied Building Credits, Inc., alleges that it is the holder and owner for value and in due course and before maturity of a promissory note executed by Oliver A. Peirce and his wife, Anastasia S. Peirce; that the said note is payable in monthly Installments; that it contains an acceleration clause under which all installments automatically matured if any one should not be paid at maturity,; that the first installment is due and unpaid and that accordingly the entire amount of the note is now due and payable together with, attorney’s fees as provided for in the note at 15% of the total of principal and interest; that the said note further provides for “late charges” at the rate of five cents per dollar on each installment which is more than fifteen days in arrears; that in connection with the said note a “lien was recorded * * * against the property owned by the defendants, * * * which lien inures to the benefit of the holders o-f said note.”
Plaintiff corporation then prays for judgment against Oliver A. Peirce and Anastasia S. Peirce for $1,023.32 with interest at the highest lawful contract rate, together with attorney’s fees at 15% of the principal and interest and “late charges” amounting to $51.17 and for all costs. And petitioner further prays for a recognition of the lien which was recorded against the property of the said defendants.
The defendants admitted the execution of the note, but they averred that plaintiff was not and is not the holder in' due course for the following reasons: They contend that they are husband and wife and that they own a certain piece of improved property at Chalmette, in the Parish of St. Bernard; that they entered into a written contract with C. G. Mann Co., Inc., as contractors, for certain improvements to their said residence for a price of $890; that when they entered into the said contract the contractor advised them that the necessary loan for payment of the contract price could be arranged on what is known as “Federal Housing Administration Plan”; that in connection with the execution of the contract, Mr. Peirce executed a credit application and both signed the note which is now sued on but which was not dated at the time it was signed by them; that the said note was for the sum of $1,023.32, and that they were told by the contractor that on comple *405 tion of the work the necessary loan would be completed by a finance company on the Federal Housing Administration Plan, and that the contract price, $890, would be paid to the contractor by the finance company. They further alleged that the work, was never satisfactorily completed, but was performed in an unworkmanlike manner, and they therefore contend that they should not be required to make payment on the note. They then charge that by the recordation of the 'lien against their property they have been damaged, and in a reconventi'onal demand they pray for judgment against the plaintiff corporation in the sum of $500, together with a reasonable attorney’s fee. They also aver that the finance plan providing interest as set forth which included the “late charges” constitutes usury.
In the Twenty-fifth Judicial District Court for the Parish of St. Bernard there was judgment dismissing the suit of plaintiff as in case of non-suit, and there was also judgment dismissing the reconventional demand of defendants as in case of non-suit. Plaintiff corporation appealed devolu-tively from the said judgment, and defendants answered the appeal praying that the suit of plaintiff be definitively dismissed and that there be judgment in reconvention in their favor as originally prayed for.
The record leaves no doubt as to what actually occurred. Mr. and Mrs. Peirce decided to have their residence “re-sided” with Nu-Aluminum, and on May 26,, 1953, they entered into a contract with the contractor, C. G. Mann Co., Inc., to do this work for the sum of $890. Being advised by the contractor that a loan on the Federal Housing Administration Plan could be arranged, Mr. Peirce filled out a credit application and he and Mrs. Peirce executed an installment note which was not dated. This was done with the understanding that the note would be dated on satisfactory completion of the work and that the note, together with the certificate of completion, would be delivered to the finance company, which would then make the loan to the defendants by paying the proceeds of the loan over to the contractor. The contractor arranged with :the present plaintiff finance company, which was in the business of financing Federal Housing Administration loans, and the said finance company agreed to purchase the, said note.
Under the regulations of the Federal Housing Administration neither the finance company, which makes the loan, nor' the" Federal Housing Administration undertakes to determine when such a contract has been satisfactorily completed, and accordingly there is a requirement in the regulations of the Federal Housing Administration to the, effect that in all cases' a completion certify cate must be obtained from the owner.
When the contractor attempted to obtain this necessary, certificate ■ from Mr. Peirce ■ he pointed out objections which he had to the work which had been done and refused to sign the certificate. The contractor made some corrections in the work, but again Mr. Peirce refused to sign the certificate. In the absence of Mr. Peirce, the contractor prevailed upon Mrs. Peirce to sign the certificate of acceptance and then, having dated the note, presented it, together with the certificate of acceptance which had been signed only by Mrs. Peirce to the plaintiff, Allied Building Credits, Inc., and. obtained from that corporation payment of the contract price, to-wit $890.
It is now the contention of the defendants, Mr. and Mrs. Peirce, that the plaintiff finance company is not the holder in due course since it kn'ew or ought to have known that under the" regulations of the Federal ' Housing Administration a proper certificate of completion was necessary,‘and since it knew or ought to have known that such certificate should have been signed by Mr. Peirce as head and master of the community. . ■
Under the Federal Housing Administration Plan in accordance with which this loan was to be financed, the completion certificate executed by the owners is a sacramental requirement.
There can be no doubt that in Louisiana, the husband, as head and master of the community, is the owner whose acceptance *406 must be obtained. If the husband, as head of the community, is to be held liable on a note which is given as payment for work which is done on the residence' occupied by the community, it necessarily follows that it . is the husband who must determine whether the work has been done satisfactorily. Therefore, in order to give life to the note which had been signed previously, it was necessary that there be furnished to the , lending company, along with the note, the certificate of .completion which is required by the regulations of the Federal Housing Administration. The plaintiff having purchased the note without the proper, certificate of completion was, we think, in no better position than the original holder, C. G. Mann Co., Inc., would have been, and the question which is therefore presented is not only whether the holder of the note, the present plaintiff, is a holder in due course, but whether, as a matter of fact, there is a note which actually ever came into existence.
It was, of course, not only understood between the defendants and the contracting company that the note would not be dated and, in fact, would not come into being as a note ■ until the satisfactory completion of the work, but the execution by the owner of such a certificate was required by the regulations of the Federal Housing Administration.
If it should be held that the note actually came into being, it would then be necessary to determine whether the present plaintiff, Allied Building Credits, Inc., became a holder in due, course or whether there might be set up against it any infirmities which might have been urged against the original holder, the contractor.
We have focused our attention on four very interesting decisions on the question of the effect on the rights of a purchaser of a note who knew or should have known that the note was given for some special purpose, such as the purchase of an automobile or of a household appliance, and who actually knew or should have known that as against the vendor of the article — the original holder of the note — a defense of failure or partial failure of consideration could have been urged. Those cases are: General Motors Acceptance Corp. v. Swain, La.App., 176 So. 636; C. I. T. Corporation v. Emmons, La.App., 197 So. 662; International Harvester Co. v. Carruth, La.App., 23 So.2d 473; White System of New Orleans v. Hall, 219 La. 440, 53 So.2d 227.
In ea.ch of those cases a note had been given for a part of the purchase price of an automobile or household appliance of some kind.- In each of the first three of those cases the loan company which had purchased the note was held to have had so intimate a connection with the original transaction from which the note resulted that, as against -it, there might be pleaded any equity which the maker of the note might have set up against the original vendor of the article. 'In the fourth of the above cases, White System of New Orleans v, Flail,- the Supreme Court held that the loan company had not been sufficiently involved in or intimate with the original transaction to justify a holding that in purchasing the note the loan company had not become,holder in due course.
We have studied those cases carefully and have reached the conclusion that no one of them is controlling here for the reason that we think that here the note did not actually come into being as a note.
In General Motors Acceptance Corp. v. Daigle, 225 La. 123, 72 So.2d 319, the Supreme Court found a situation in which the plaintiff, General Motors Acceptance Corporation, bought a chattel mortgage note' which had been executed by the defendant, the purchaser of an automobile, and had been transferred by the original holder to the plaintiff corporation. When foreclosure under the note and chattel mortgage was attempted, the defendant set up the defense that the automobile, for the purchase price of which the note had been given, was a used car instead of a demonstrator as was specified in the contract of sale. The loan corporation contended that, under the Negotiable Instruments Law, it was a holder in due course and that such a defense could not be set up against it: The Supreme Court *407 held that the loan corporation had purchased the note before obtaining from the Motor Vehicle Commissioner of the State of Louisiana the Title Certificate required by law and which certificate would have shown that the automobile was a used car and not a demonstrator, and the -Court then held that since the loan company would have had this information had it complied with the law, the defense was available and could be presented against it, the holder of the note.
We think that this conclusion, when applied here, makes it necessary that we hold that the note on which this suit is brought, as a matter of law, never came into being. The regulations,of the Federal Housing Administration required that there be produced a certificate of completion and it was understood between the maker of the note and the contractor that the note was not to be dated and was not in fact to come into existence until the certificate of conn, pletion was executed by the owner of the; property. The loan company was bound to have known this and’ when it purchased the so-called note, without the proper certificate signed by the property owner, it acquired no rights under the note.
It may be that the loan company, in an appropriate action, may present a claim against the contractor, and it may also be that the contractor in an appropriate action may present a claim against the owner for the value of the work done and that as against this claim the owner may set up the defense that the ■ work has never been properly completed. However, the action which is now before us is.brought on the note which, we think, never came into legal being.
The record shows that the lien wqs not recorded by the plaintiff but was recorded by the contracting company.
The judgment appealed from is amended and there is now judgment dismissing the suit of plaintiff at its cost, and there is further judgment dismissing the recon-ventional demand at the cost of defendants, plaintiffs in reconvention.
Amended and affirmed.